Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| JESÚS R. DÍAZ GONZÁLEZ<br>Licencia núm. 2892<br><br>Recurrente<br><br>v.<br><br>OFICINA PARA LA REGLAMENTACIÓN DE LA INDUSTRIA LECHERA DE PUERTO RICO<br><br>Recurrido | KLRA202400278 | REVISIÓN JUDICIAL procedente de la Oficina de Reglamentación de la Industria Lechera, Departamento de Agricultura<br><br>Querella núm.: 23-018<br><br>Sobre: Decomiso de Leche (Bacterias) |
|---|---|---|

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres, la jueza Rivera Pérez y el juez Campos Pérez.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 19 de julio de 2024.

Comparece ante este tribunal apelativo, el Sr. Jesús R. Díaz González (el señor Díaz González o el recurrente) mediante el recurso de revisión del epígrafe solicitándonos que revoquemos la *Resolución y Orden Final* emitida por la Oficina de Reglamentación de la Industria Lechera (la ORIL o la recurrida) el 29 de abril de 2024, notificada al día siguiente. Mediante este dictamen, la ORIL declaró *No Ha Lugar* a la querella presentada por el recurrente y a su vez; le ordenó que, una vez la vaquería de su propiedad reanude las entregas de producción de leche, la planta asignada deberá reiniciar el descuento correspondiente para cumplir con el pago de la *Orden de Cobro por Contaminación de Leche en Tanque Termo* del 7 de junio de 2023.

Por los fundamentos que expondremos a continuación, procedemos a revocar el dictamen recurrido.

**I.**

Surge del recurso ante nuestra consideración que, el 7 de junio de 2023, la ORIL emitió una *Orden de Cobro por Contaminación de Leche en Tanque Termo* contra el señor Díaz González.[1] En esta, le notificó que incurrió en violación de la Sección 6-A-8 y la Sección 7-A-2 del Reglamento Núm. 5 de la Industria Lechera, aprobado el 29 de octubre de 1991, según enmendado. Ello, debido a que él, como ganadero, es responsable de la contaminación por bacteria del total de la leche almacenada en el Tanque Termo de la Vaquería Tres Monjitas, Inc.

Se especificó que la entrega de 2,649 cuartillos de leche de su vaquería contaminó 16,968 cuartillos adicionales de otros ganaderos. Por lo que, le corresponde efectuar un pago global de $16,770.40 por el costo del decomiso.[2] Se indicó que este pago "lo realizará mediante descuentos en la liquidación extendiéndose por un periodo de 26 quincenas, comenzando en la quincena que ocurrió el decomiso según dispone la Orden Administrativa Núm. 2014-2 del 16 de enero de 2014, según enmendada." A su vez, se incluyó una orden a la Planta Elaboradora Vaquerías Tres Monjitas, Inc. a realizar los descuentos allí consignados, los que serán remitidos a la ORIL hasta completar el pago de los $16,770.40. Apercibió que, una vez se reciba la totalidad, emitirá una Certificación de No Deuda, así como otro dictamen para detener los descuentos que notificará a la Planta Elaboradora.

El 10 de julio de 2023, el recurrente presentó una *Querella y Solicitud de Vista Administrativa* (Querella Núm. 23-018) en la que adujo que el 3 de junio recibió una llamada telefónica del Laboratorio de la ORIL informándole que la producción de su vaquería sería decomisada por incumplir con el parámetro de

---

[1] Véase, Apéndice del Recurso, a la pág. 1.
[2] *Íd.*, véase el desglose de la cuantía.

bacterias en la leche, que la producción no se le pagaría y que era responsable de pagar el camión termo por lo que recibiría una Orden de Cobro a esos efectos. Alegó que recibió el documento intitulado *Orden de Cobro por Contaminación de Leche en Tanque Termo* en el que se le advirtió que debería pagar los costos de disposición y transporte de 19,617 cuartillos de leche decomisada que incluyen 2,649 entregados por él y 16,698 de otros ganaderos. Expuso, además, que en el mismo no se indica cuál es el conteo bacteriano que supuestamente arrojó la producción recogida el 3 de junio de 2023 que incumplía con las normas requeridas. Añadió, que ello le causaría un daño real inmediato al obligarlo a pagar $16,770.40 mediante descuentos de la venta de leche cruda que este realiza a la Vaquería Tres Monjitas, Inc.

Argumentó, además, que la ORIL violó el debido proceso de ley al no cumplirse con los requisitos reglamentarios para ordenar el decomiso de la leche.

La recurrida contestó oportunamente e incluyó en su escrito múltiples defensas afirmativas, más solicitó la desestimación de la Querella Núm. 23-018. Entre las defensas afirmativas están las siguientes:[3]

- el Reglamento Núm. 8889 establece que la leche cruda tiene que cumplir con quince (15) parámetros de calidad siendo uno de ellos el límite bacteriano;
- "[e]l 11 de agosto de 2021, el Agrónomo Milton López comunicó una carta dirigida a los productores de ORIL que ORIL adquirió equipo y tecnología nueva para analizar muestras y detectar de manera expedita el cumplimiento (o no) con los límites bacterianos y células somáticas establecidos por el Reglamento 5 y reitera la norma adoptada sobre el decomiso de la leche fuera de los parámetros de límite bacteriano y células somáticas.";
- "[e]l análisis de las muestras individuales del contenido del T48 arrojó que la leche cruda proveniente de la vaquería operada por Jesús R. Díaz no cumplía con el parámetro de calidad de límite bacteriano para una vaquería individual según el Reglamento 5. El análisis de la muestra individual de Jesús R. Díaz arrojó el resultado de 4,000,000 de colonias por mililitro. Exhibit 3.";

---

[3] Véase, Apéndice del Recurso, a las págs. 12, 14-16.

- "[a]mbos resultados (el mezclado ((570,000) y el individual (4 millones)) violan los requisitos para el parámetro reglamentario de límite bacteriano, no apto para consumo humano y sujeto a decomiso"; y,
- "[...] La leche producida en la vaquería de Jesús R. Díaz contaminó la leche producida por las otras vaquerías al ser mezcladas. Por lo tanto, Jesús R. Díaz causó el decomiso y debe pagar por el volumen de la leche decomisada proveniente de las vaquerías cuya leche cumplió con el parámetro de calidad, no recibir remuneración por la leche que contaminó proveniente de su vaquería y pagar los costos de disposición."

Del dictamen impugnado surge que la Oficial Examinadora, Lcda. Ashley La Torre, otorgó término para que el recurrente se expresara sobre el pedido desestimatorio y el 12 de diciembre de 2023, procedió a declararlo *No Ha Lugar*. Además, se indicó que, luego de varios trámites procesales, el 5 de marzo de 2024 se celebró la Vista Adjudicativa en la que declaró el recurrente como dueño y operador de la vaquería, y como testigo de la ORIL el Agrónomo Milton Díaz, Director del Programa de Calidad de la agencia. También se detalló los documentos que fueron admitidos como evidencia documental.

Así, luego de aquilatar la prueba testifical y documental, la Oficial Examinadora consignó un (1) hecho estipulado por las partes, once (11) hechos probados por el señor Díaz González, y doce (12) demostrados por la ORIL.[4] Conforme a estos, razonó:[5]

> ...
> ...Existe, por tanto, evidencia sustancial de que existía causa para el decomiso ordenado. Regl. 8889, Sec. 7(A)(2). Por otro lado, el marco fáctico del decomiso en esta querella no es uno ordenado a nivel de finca por la figura del ganadero bajo "notificación", sino que se detecta la condición de **incumplimiento con el parámetro bacteriológico a nivel de recogido** cuando la planta analiza primero la leche y luego hace el referido al Laboratorio de Calidad. En estos casos, aplica la Sección 7(A)(2) y las Secciones 6(A)(8) y 6(H) del Reglamento 5. Pues, la leche cruda mezclada "no excederá" el límite de 300,000 colonias de bacterias por mililitro, y **es una condición que conlleva el decomiso**.
> ...
> ... Cabe destacar que, el Querellante admitió recibir el correo electrónico del 11 de agosto de 2021, el cual

---

[4] *Íd.*, a las págs. 34-40.
[5] *Íd.*, a las págs. 44-45.

informaba a los ganaderos de la **nueva directriz emitida por el Programa de Calidad**. A tales efectos, notificó el Programa de Calidad que cualquier ganadero que dañase un tanque termo por incumplir con los parámetros de calidad (células somáticas y bacterias) sería responsable de pagar el valor total de dicha leche decomisada. (Exhibit A). De igual forma[,] se desprende de la Notificación del 11 de agosto de 2021 que, ORIL adquirió nuevos equipos que permiten analizar muestras "en plazo mínimo de tiempo" para detectar el conteo bacteriano y de células somáticas. Lo que permite que ORIL advenga en conocimiento rápidamente sobre la calidad de la leche y pueda actuar con prontitud para evitar que leche que incumple con estos parámetros sea procesada y llegue el consumidor.

No podemos perder de perspectiva que, la política pública del Reglamento 5 es asegurar el bienestar general y la salud de todos los consumidores de leche en Puerto Rico, el cual incluye niños, adultos y envejecientes, a través de un producto de calidad óptima desde su producción hasta la venta para consumo humano. Por lo cual, basado en los hechos objetivos probados en el presente caso, **inferencias razonables que surgen de tales hechos**, y tomando en consideración el derecho aplicable y todo el expediente administrativo es forzoso concluir que la Orden de Cobro fue correcta en adjudicar la responsabilidad al Sr. Jesús R. Díaz González, por ser quien causó el decomiso del Tanque Termo 48 aportando leche fuera de la norma reglamentaria de calidad. [Énfasis nuestro]

Inconforme, el recurrente acude ante este foro apelativo mediante el recurso de revisión judicial de epígrafe imputándole al foro administrativo haber incurrido en los siguientes errores:

A. ERRÓ LA OFICINA PARA LA REGLAMENTACIÓN DE LA INDUSTRIA LECHERA PARA PUERTO RICO (ORIL) AL DECLARAR NO HA LUGAR LA QUERELLA 23-018, YA QUE LA ORIL INCUMPLIÓ CON EL DEBIDO PROCESO DE LEY DEL QUERELLANTE-RECURRENTE CUANDO NO APLICÓ CORRECTAMENTE LAS DISPOSICIONES DEL REGLAMENTO 8889 DEL 27 DE ENERO DE 2017.

B. ES ARBITRARIA Y CAPRICHOSA LA DECISIÓN DE ORIL EN LA QUERELLA 23-018, FUNDAMENTADA EN LA RESOLUCIÓN Y ORDEN FINAL DEL 30 DE ABRIL DE 2024 DONDE ORIL APLICÓ UNA DISPOSICIÓN REGLAMENTARIA SOBRE "ADULTERANTES E INHIBIDORES EN LA LECHE CRUDA" POR ANALOGÍA A LA SITUACIÓN DE LA QUERELLA 23-018 QUE VERSA SOBRE BACTERIAS Y LÍMITE DE CÉLULAS SOMÁTICAS, LO ANTERIOR CUANDO EL REGLAMENTO 8889 DEL 27 DE ENERO DE 2017 CONTIENE PENALIDADES ESPECÍFICAS PARA EL CASO DE BACTERIAS Y LÍMITE DE CÉLULAS SOMÁTICAS.
C. ERRÓ LA OFICINA PARA LA REGLAMENTACIÓN DE LA INDUSTRIA LECHERA PARA PUERTO RICO

(ORIL) CUANDO APLICÓ LAS DISPOSICIONES SOBRE "ADULTERANTES E INHIBIDORES EN LA LECHE CRUDA" DEL REGLAMENTO 8889 DEL 27 DE ENERO DE 2017 A HECHOS QUE VERSAN SOBRE "CONTEO DE BACTERIAS Y LÍMITE DE CÉLULAS SOMÁTICAS", AUN CUANDO DICHO REGLAMENTO YA CONTIENE PENALIDADES Y PROCESO ESPECÍFICOS PARA EL CASO DE BACTERIAS Y LÍMITE DE CÉLULAS SOMÁTICAS, LO ANTERIOR CREANDO UNA PENALIDAD QUE NO ESTÁ CONTENIDA EN EL REGLAMENTO 8889.

D. ERRÓ LA OFICINA PARA LA REGLAMENTACIÓN DE LA INDUSTRIA LECHERA PARA PUERTO RICO (ORIL) CUANDO CREÓ UNA REGLA LEGISLATIVA QUE CREA UNA CONSECUENCIA PUNITIVA POR ANALOGÍA, BASADA EN UNA "NOTIFICACIÓN A LOS PRODUCTORES DE LECHE LICENCIADOS POR LA ORIL Y SUJETOS AL REGLAMENTO NÚM. 5 DE LA ORIL" LA CUAL FUE FIRMADA Y ENVIADA POR EL DIRECTOR DE PROGRAMA DE CALIDAD DE ORIL, QUIEN NO ES ADMINISTRADOR DE ORIL, Y NI SIQUIERA ES EMPLEADO DE DICHA AGENCIA.

El 4 de junio de 2024, emitimos una *Resolución* concediendo a la parte recurrida el término de treinta (30) días para expresarse. El 3 de julio siguiente se presentó el alegato en oposición, por lo que nos damos por cumplidos; y a su vez, decretamos perfeccionado el recurso.

Analizados las comparecencias de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

### Revisión judicial de las decisiones administrativas

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que estas desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). En el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Asoc. Fcias. v. Caribe*

*Specialty et al. II.*, 179 DPR 923, 940 (2010).[6]

No obstante, esta deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder, solamente, cuando la misma no esté basada en evidencia sustancial, cuando la agencia erró en la aplicación de la ley y cuando su actuación resulte ser una arbitraria, irrazonable o ilegal. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012). Por consiguiente, la revisión judicial de una decisión administrativa se circunscribe a analizar: (1) si el remedio concedido fue razonable; (2) si las determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. Fcias. v. Caribe Specialty et al. II, supra*, a la pág. 940.

En este ejercicio, nuestro más alto foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *Camacho Torres v. AAFET,* 168 DPR 66, 91 (2006). Quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Íd.*

Como corolario a lo anterior, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), Ley núm. 38-2017, 3 LPRA sec. 9675, dispone que las determinaciones de hechos realizadas, por una agencia administrativa, serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad.

---

[6] Véanse, también, *Martínez v. Rosado,* 165 DPR 582, 589, (2005); *Otero v. Toyota,* 163 DPR 716, 727 (2003).

*Pacheco v. Estancias,* 160 DPR 409, 432 (2003). De modo que, la parte afectada, deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. *Otero v. Toyota,* supra, a la pág. 728. En consecuencia, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Íd.*

Por otro lado, las conclusiones de derecho son revisables en toda su extensión. Sección 4.5, Ley núm. 38-2017, *supra.* Sin embargo, ello "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia." *Otero v. Toyota,* supra, a la pág. 729. Cuando un tribunal llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.*

En conclusión, el tribunal solo podrá sustituir el criterio de la agencia por el propio cuando no pueda encontrar una base racional para explicar la determinación administrativa. *Hernández, Álvarez v. Centro Unido,* 168 DPR 592 (2006).

**La Ley para Reglamentar la Industria Lechera**

La Ley núm. 34 de 11 de junio de 1957, según enmendada, 5 LPRA sec. 1092 *et seq,* fue adoptada para reglamentar la industria lechera y disponer la creación de un Fondo para su fomento (Ley núm. 34). Mediante el referido estatuto, se creó la Oficina del Administrador de la Reglamentación de la Industria Lechera y se determinan cuáles son sus poderes y facultades para reglamentar dicha industria.

Mediante dicha ley, se facultó al Secretario de Agricultura a nombrar en su Departamento, con la aprobación del Gobernador, un Administrador de la Reglamentación de la Industria Lechera. Artículo 2 de la Ley núm. 34, 5 LPRA sec. 1093. El Administrador tiene amplios poderes de investigación y tiene el deber de reglamentar todas las fases de la industria de la leche y los productos derivados de esta, incluyendo la producción, elaboración, esterilización, manufactura, almacenaje, compra y venta, transportación y distribución del producto principal y sus derivados. Artículo 5 de la Ley núm. 34, 5 LPRA sec. 1096. A su vez, el Administrador de la ORIL debe establecer las normas de elaboración, esterilización, clasificación, empaque, envase, enlatado, rotulación, calidad y presentación de la leche y de sus productos derivados. *Íd.*

Asimismo, preceptúa el Artículo 16 de la Ley núm. 34, 5 LPRA sec. 1107, del estatuto que la facultad de reglamentación adscrita al Administrador de la ORIL está sujeta a las disposiciones de la ley, y hasta donde sea necesario para poner en vigor la política pública y los fines de la ley. En la determinación del límite de reglamentación de la industria, el Administrador tomará en cuenta las necesidades e intereses de los diferentes sectores dentro de la industria. *Íd.* De manera que, cualquier medida que adopte, tienda a dar estabilidad y a estimular el progreso en la producción y mercadeo de leche y de los productos derivados de esta, y por tanto propenda a la prosperidad a la industria. *Íd.*

**Reglamento Núm. 5 de la Industria Lechera**

De conformidad con las facultades concedidas por la Ley núm. 34, el Administrador aprobó el Reglamento núm. 5 intitulado *Reglamento núm. 5 de la Oficina de Reglamentación de la Industria Lechera para establecer las normas que regirán la calidad de la leche en todas sus fases de producción, elaboración y venta,* registrado en

el Departamento de Estado como el Reglamento núm. 4565 de 29 de octubre de 1991, según enmendado. En lo aquí pertinente, el referido reglamento fue enmendado por el Reglamento Núm. 8889 del 29 de diciembre de 2016, el cual se conoce y puede citarse como *Reglamento Número 5 de la Industria Lechera* (Reglamento Núm. 5). Artículo 1 del Reglamento Núm. 5.  El propósito fundamental de este cuerpo de normas es establecer aquellas normas necesarias y adecuadas para asegurar la calidad de la leche y los aspectos sanitarios de esta en todas sus fases. Artículo 4(B) del Reglamento Núm. 5. Este aplica a toda persona natural y jurídica que opere una vaquería de primera clase, elaboradores, vendedores, distribuidores, agentes, transportadores, cualquier persona que esté involucrada directa o indirectamente en la fase de la producción, elaboración y venta de leche. *Íd.*, inciso (C).

El Reglamento Núm. 5 establece en su Sección 6 el conjunto de propiedades que determinan la calidad de la leche y productos derivados de esta. Artículo 7 del Reglamento Núm. 5. A esos fines, dispone que el conjunto de propiedades que determinan la calidad de la leche homogenizada y pasteurizada, y los productos derivados de la leche que se produzca, elabore o se venda en Puerto Rico, serán los establecidos en dicho Reglamento y los de cualquier otro reglamento de una Agencia Reglamentadora que sean aplicables. *Íd.*

En lo que aquí concierne, precisa que detallamos la Sección 7(A)(2) del Artículo 8 del Reglamento Núm. 5, intitulado *Procedimientos para determinar el cumplimiento con las normas de calidad bacteriológicas, químicas y de temperatura para leche cruda y pasteurizada y productos de leche pasteurizados* que lee:

2. A Nivel de Recogido

Toda planta o centro de pasteurización que tenga duda de la calidad de la leche recibida en cualquiera de sus rutas de recogido enviará el tanque termo de leche al Laboratorio de ORIL para análisis. De estar dicha leche fuera de los requisitos de calidad, cuya violación conlleve decomiso según establecido en este

reglamento, ésta se decomisará. Además, se tomarán muestras periódicas de los tanques termo en tránsito de la finca a la planta o centro de pasteurización o elaboración y en la misma. **Aquellos casos en los que la muestra determine una violación a los parámetros que conlleve decomiso, y por tanto haya que decomisar el contenido del camión termo, se identificará el o los ganaderos responsables de la condición**. Se iniciará un muestreo en la vaquería y en caso de ser necesario, se le aplicarán los procedimientos establecidos en esta sección.

**En el caso que cualquier ganadero cause el decomiso de leche de un tanque termo por estar la leche cruda contaminada con antibiótico, drogas, inhibidores u otros adulterantes, crioscopia o por exceder el límite de acidez de titulable vendrá obligado a pagar el costo de disposición y el volumen de la leche dañada decomisada**. … [Énfasis nuestro]

Por último, el reglamento establece que este será interpretado liberalmente a favor de la autoridad del Administrador. "A ese efecto, podrá el Administrador **formular y adoptar los planes y medidas necesarias para hacer frente a las variaciones y condiciones cambiantes de la Industria, todo ello a los efectos de proteger el interés general y la política pública**." [Énfasis nuestro]. Artículo 20 del Reglamento Núm. 5.

### III.

En esencia, el recurrente planteó que la ORIL infringió el debido proceso de ley al imponerle la sanción de pagar por el decomiso total de la leche cruda del Tanque Termo 48 por razón de incumplir con parámetros de bacterias, ya que este proceder no está contemplado en la reglamentación promulgada por la agencia. Así, arguyó que actuó incorrectamente al aplicarle una pena por analogía utilizando disposiciones del Reglamento que resultan inaplicables a los hechos y mediante un documento que constituye una Regla Legislativa firmada por el Director de Programa de Calidad y no por el Administrador de la ORIL.

De entrada advertimos que en los errores señalados no se impugnan las determinaciones de hechos consignados en la *Resolución y Orden Final;* sin embargo, resulta imprescindible señalar que el recurrente **no presentó** ante este tribunal una

transcripción o una exposición narrativa de la prueba oral vertida en la vista adjudicativa celebrada ante la Oficial Examinadora, Lcda. Ashley La Torre, el 5 de marzo de 2024, conforme lo provisto por la Regla 66 de nuestro Reglamento, 4 LPRA Ap. XXII-B R. 66. Así pues, tomamos como correctas las determinaciones de hechos, en especial, las relacionadas al **testimonio y las admisiones del Agrónomo Milton López**, Director del Programa de Calidad de la ORIL. Como indicamos, las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. Por consiguiente, debemos presumir que los hechos probados por los testimonios vertidos, y consignados en la determinación recurrida, están conforme a la prueba oral presentada en la vista evidenciaria.

Como indicamos, el recurrente señala en síntesis que el recurrido erró al aplicar por analogía la penalidad impuesta. En consecuencia, solo nos corresponde evaluar si la recurrida erró en la aplicación del derecho. Como enunciamos, la LPAUG dispone que las conclusiones de derecho serán revisables por el tribunal en todos los aspectos. Veamos.

a.

El recurrente expone que la ORIL aplicó una sanción contenida en el Reglamento Núm. 5 relativa a leche contaminada con adulterantes o antibióticos que exige el decomiso inmediato del termo y el pago total de la producción contenida en este, a una leche que incumplía con parámetro de bacterias. Arguyó que el Reglamento contiene secciones específicas de cómo verificar y tratar con el incumplimiento de límite bacterias o células somáticas. Por lo que, argumentó que la ORIL violó el debido proceso de ley al

aplicar una sanción no reglamentada por la agencia; lo cual, a su vez entiende, constituye una actuación *ultravires* y caprichosa.

Por otro lado, el recurrente plantea que la *Notificación a* los *Productores de Leche Licenciados por la ORIL ...* del 11 de agosto de 2021, y según manifestado por el Agrónomo Milton López, en la vista, aplica por analogía y no constituye una orden administrativa o un reglamento. A su vez, expone que este admitió que dicha notificación no tiene la firma del Administrador de la ORIL y que tampoco él, como Director del Programa de Calidad, tiene la autoridad para hacer órdenes administrativas. Añadió en su escrito que, el Agron. Milton López expresó que la Sección 7(A)(2) del Reglamento Núm. 8889 no dispone específicamente el pago del volumen de leche dañado por el ganadero causante debido al incumplimiento con el parámetro de bacterias.[7] Por tanto, reafirmó que la acción de la ORIL no está sustentada por el Reglamento Núm. 5.

Sobre lo antedicho, el señor Díaz González añadió que la Querella 23-018, emitida por la ORIL, versa sobre el incumplimiento con parámetros con bacterias y células somáticas, y no sobre leche cruda contaminada con antibiótico, drogas, inhibidores u otros adulterantes según contempla el Artículo 8 del Reglamento Núm. 5. Por lo que, recalcó que se aplicó, por analogía, una sanción o castigo no reconocido en el cuerpo reglamentario.

Debemos apuntalar que no cabe duda de que la ORIL tiene la responsabilidad principal de asegurarse que la leche cumpla con requisitos básicos de calidad y salubridad, y que está apta para el consumo humano. Por lo que, si se incumple con ello la **agencia está totalmente facultada para ordenar el decomiso de la leche**. Más aún, el Artículo 7 en la Sección 6(H) preceptúa que la leche

---

[7] Véase, Recurso de Revisión Judicial, a la pág. 6.

cruda que se confirme, a través de un examen bacteriológico, que no está apta para el consumo humano será decomisada. Además, como citamos, el Artículo 8 del Reglamento Núm. 5, Sección 7, dispone claramente que en el caso de que cualquier ganadero cause el decomiso de leche de un tanque termo, por estar la leche cruda *contaminada con antibiótico, drogas, inhibidores u otros adulterantes, crioscopia o por exceder el límite de acidez de titulable,* vendrá obligado a pagar el costo de disposición y el volumen de la leche dañada decomisada.

De la lectura minuciosa de esta norma reglamentaria claramente dispone la facultad de la ORIL para ordenar el decomiso de la leche cruda, que fuese contaminada *con antibiótico, drogas, inhibidores u otros adulterantes, crioscopia o por exceder el límite de acidez de titulable* y a su vez, el ganadero responsable de dicha contaminación viene obligado a pagar el costo de disposición y el volumen de la leche dañada decomisada. Sobre este particular, se hace importante especificar que la palabra *adulterantes* es definida en el reglamento como *cualquier sustancia extraña a la composición normal de la leche,* ***añadida en forma intencional o accidental****, o que sea utilizada para alterar su volumen, peso o su composición química o bacteriológica.* Artículo 5, Sección 4(B), del Reglamento Núm. 5.

En virtud de lo antedicho, forzoso es concluir en el citado Artículo 8 del Reglamento Núm. 5, Sección 7, no incluye imponer responsabilidad de pagar el costo de disposición y el volumen de la leche dañada al ganadero que provoque el decomiso de la que esté almacenada en un tanque termo <u>por razón de incumplir por el conteo bacteriano</u>.

Respecto a este particular, en el dictamen recurrido la ORIL razonó que:[8]

> "El Reglamento Núm. 5 **no provee para la situación como la de la querella en que el decomiso es provocado por incumplimiento del límite bacteriano** de un ganadero que causa que toda la leche sea inapta para el consumo humano. Sin embargo, el Reglamento sí establece que la leche cuyo conteo bacteriano incumpla con los límites del parámetro será decomisado de la misma forma que contempla el decomiso para **la leche afectada por adulterantes e inhibidores**. Conforme a lo anterior, a las disposiciones reglamentarias y a la opinión emitida por el Tribunal Supremo de Puerto Rico en el caso <u>Muñoz Hernández v. Policía de Puerto Rico</u>, *supra*, entendemos que no es arbitrario ni caprichoso **aplicar por analogía** a la controversia ante nos lo dispuesto por el Reglamento 5 en los casos de adulteradores e inhibidores. En estos casos el Reglamento 5 establece que el ganadero causante de la contaminación de la leche mezclada es responsable ante los otros ganaderos que depositaron leche que podía ser procesada. Es decir, el causante del decomiso es responsable ante los demás." [Énfasis nuestro]

La analogía es definida como la relación de semejanza entre cosas distintas. Se trata de un procedimiento que, fundándose en la semejanza o igualdad de dos casos, uno no previsto en la ley u otro expreso en ella, abstrae de este un principio para aplicarlo a aquel.[9] Al respecto, destacamos las siguientes expresiones del alto foro en *Pueblo v. Plaza Plaza,* 199 DPR 276 (1997); "... en el sentido amplio de la lógica jurídica, "toda interpretación requiere analogía", de modo que "la prohibición de la analogía se debería entender como la exclusión de la analogía 'con el fin de crear nuevo derecho' con lo que la reducción del significado de la prohibición es indudable". (Citas omitidas). **Lo que está vedado es la aplicación analógica de la ley**; esto es, "que, una vez interpretada la ley (es decir, una vez establecidos los supuestos que contiene), **se extienden sus consecuencias** (se aplican) a, **otros supuestos no contenidos, pero similares o análogos**". (Citas omitida)." *Íd.*, a la pág. 284. En consecuencia, erró la recurrida al utilizar el método de la analogía

---

[8] Véase, Apéndice del Recurso, a las págs. 44-45.

[9] Véase, Miguel, Ángel Del Arco Torres, y Manuel Pons González, *Diccionario de Derecho Civil*, Tomo Primero, Editorial Aranzadi, SA, 1984, a la pág. 104.

para concluir que procedía imponer la sanción a los casos donde la leche cruda excediera sus límites bacterianos, sin más razón. Enfatizamos que el Reglamento Núm. 5 contempla diáfanamente las causas específicas por las que se le impondrá al ganadero, responsable de la contaminación de la leche cruda en los tanques termos, el pago del costo de la disposición y el volumen de la leche dañada decomisada. Por lo que, fue la propia agencia, basada en su poder de reglamentación, que decidió que, aunque la leche contaminada por el exceso de conteo bacteriano sería decomisada, <u>determinó no imponerle la responsabilidad del pago al ganadero responsable</u>.

En fin, del dictamen recurrido no surge la semejanza entre el decomiso por el exceso en los límites de bacterias en la leche cruda y el decomiso de esta por adulterantes e inhibidores. Si bien ambas situaciones provocan que la leche no sea apta para el consumo humano, ello no ocasiona que ambas reciban la misma sanción. Esto, debido a que, como hemos explicado, el propio cuerpo de reglas aprobado y promulgado por la ORIL claramente establece las consecuencias para cada uno de los eventos que provoca el decomiso de la leche.

De igual manera, del dictamen recurrido no surge ninguna determinación de hecho que establezca que el exceso de límite bacteriano de la leche cruda recogida en la finca del recurrente sea atribuible a actos deliberados o intencionales realizados por este. Distinción clara entre un supuesto y el otro. Recordemos que es doctrina reiterada que, una vez promulgado un reglamento, las agencias administrativas están obligadas a cumplir con sus disposiciones. *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 DPR 70, 79 (2000); *Com. Vec. Pro-Mej., Inc. v. J.P.,* 147 DPR 750, 765 (1999).

De otra parte, del expediente administrativo surge que en el documento intitulado *Notificación a Los Productores de Leche,*

*Licenciados por la ORIL y Sujetos al Reglamento Núm. 5 de la ORIL* el Agrónomo Milton D. López Aponte, como Director del Programa de Calidad, se advirtió a los ganaderos que la leche cruda recogida en sus vaquerías y que fuese mezclada con otra producida por otras lecherías que cause el incumplimiento con uno o los dos (2) parámetros de calidad allí detallados relativos al conteo bacteriano, sería decomisada y el responsable del incumplimiento tendrá que pagar el total de la leche decomisada. Sin embargo, no albergamos duda de que dicha notificación carece de eficacia legal.

Como señalamos, la ORIL tiene facultad para promulgar y emitir reglamentos; así como órdenes administrativas u otras directrices sobre los asuntos que regula atinentes a la industria lechera. Sin embargo, no encontramos en la ley orgánica, Ley núm. 34, ni en el Reglamento Núm. 5, una disposición que autorice expresamente al Administrador de la ORIL **a delegar el poder de promulgar directrices a un subalterno de la agencia**. Por tanto, resulta forzoso colegir que ello constituye una facultad **inherente al puesto** de Administrador. Recordemos que, **es un hecho incontrovertido que la** *Notificación a Los Productores de Leche, …* **no está firmada por el Administrador.** Lo cual fue corroborado por el Agron. Milton López Aponte en su testimonio durante la vista, según se detalló en el dictamen impugnado. Más aún, en la vista este **admitió** que, como Director del Programa de Calidad, **no tiene autoridad para hacer órdenes administrativas**.

No podemos obviar que, en su oposición, la recurrida falló en discutir adecuadamente ni fundamentó en derecho cómo concederle eficacia jurídica a dicha notificación, a pesar de no estar firmada por el Administrador. Aun cuando estamos contestes con el argumento de que el Reglamento Núm. 5 debe ser interpretado liberalmente a favor del poder amplio de reglamentación del Administrador, no es posible extender dicho alcance a la situación que hoy atendemos.

Esto, debido a que reiteramos que el antedicho comunicado divulgado a los ganaderos no está debidamente formalizado por la entidad gubernamental.

En conclusión, la ORIL actuó de manera *ultra vires* al imponer la presente sanción utilizando como método de interpretación la analogía. Como indicamos, toda sanción o multa tiene que estar expresa en el reglamento. Así las cosas, los errores fueron cometidos.

Por último, precisa advertir que lo aquí determinado no es impedimento para que las partes afectadas por la contaminación de la leche, por exceso del conteo bacteriano y su posterior decomiso, pueden procurar algún remedio en los foros correspondientes.

**IV.**

Por los fundamentos antes expuestos, revocamos el dictamen recurrido. En consecuencia, dejamos sin efecto la sanción impuesta al Sr. Jesús R. Díaz González, Licencia Núm. 2892.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones